# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

_____ )
In re:                              )
                                    )  Chapter 7
    THOMAS J. FLANNERY,           )  Case No. 12-31023-HJB
    HOLLIE L. FLANNERY,           )
                                    )
        Debtors                  )
_____ )
                                    )
    JOSEPH B. COLLINS, CHAPTER 7  )
    TRUSTEE,                      )  Adversary Proceeding
                                    )  No. 13-03004-HJB
        Plaintiff,               )
                                    )
    v.                            )
                                    )
    JPMORGAN CHASE BANK, N.A.,    )
                                    )
        Defendant                )
_____ )

**MEMORANDUM OF DECISION**

Before the Court are cross-motions for summary judgment filed by the plaintiff in this adversary proceeding (the Chapter 7 trustee in the underlying bankruptcy case) (the "Trustee") and the defendant JPMorgan Chase Bank, N.A ("Chase").  Through the underlying complaint (the "Complaint"), the Trustee seeks a judgment avoiding a mortgage granted to Chase by the debtors as a preferential transfer pursuant to § 547(b) of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code").[1]

---

[1] All statutory and section references in this Memorandum are to the Bankruptcy Code, see 11 U.S.C. §§ 101 et seq, unless otherwise specified.

1

Resolution of this dispute turns on a discrete issue; namely, whether the Trustee has established the "greater distribution" element set forth in § 547(b)(5).

I.     FACTS AND TRAVEL OF THE CASE

While certain collateral facts were represented to be in dispute, the facts material to this contest, drawn from the parties' pleadings, the docket entries in the underlying Chapter 7 bankruptcy case, and the Joint Statement of Facts filed on February 12, 2014, are undisputed.

In 1980, Thomas J. Flannery and Hollie L. Flannery (the "Debtors") acquired the real estate referred to by the parties as "Lot A," which remains the site of their primary residence (the "House Lot").  In 1986, they acquired an adjoining side lot (the "Side Lot").  In March 2004, the Debtors borrowed $130,000.00 (the "2004 Loan") and granted a mortgage (the "2004 Mortgage") on the House Lot and Side Lot as security for the 2004 Loan.  The 2004 Loan and Mortgage were subsequently assigned to Washington Mutual Bank, FA ("Washington Mutual").

In 2005, the Debtors obtained a home equity line of credit ("HELOC") from Washington Mutual in the amount of $136,900.00 (later increased to $160,946.00), granting a second-priority mortgage to secure the debt (the "HELOC Mortgage").[2]  In 2008, Chase acquired the 2004 Loan, the 2004 Mortgage, the HELOC, and the HELOC Mortgage.

In 2012, the Debtors refinanced the 2004 Loan with Chase under the Home

---

[2] The parties disagree as to whether the HELOC Mortgage encumbers both the House Lot and the Side Lot.  The Trustee asserts that the HELOC Mortgage attaches to the Side Lot only, while Chase argues that the HELOC Mortgage encompasses both parcels.  For the reasons set forth herein, however, the outcome of the present matter does not require resolution of that factual dispute.

2

Affordable Refinance Program ("HARP") (the "Refinance").[3] Through the Refinance, the Debtors borrowed $75,686.00 (the "Refinance Loan") and granted a mortgage to Chase (the "Refinance Mortgage") on both the House Lot and Side Lot to secure repayment of the Refinance Loan. And, in connection with the Refinance, Chase executed a subordination of mortgage, subordinating the HELOC Mortgage to the Refinance Mortgage. On January 25, 2012, the proceeds of the Refinance Loan were used to pay off the 2004 Loan, and on February 21, 2012, a discharge of the 2004 Mortgage was recorded in the Hampton County Registry of Deeds (the "Registry"). However, the Refinance Mortgage was not recorded in the Registry until April 18, 2012.

On June 28, 2012, within 90 days from the date the Refinance Mortgage was recorded, the Debtors filed their Chapter 7 bankruptcy case. On Schedule A of their petition, the Debtors valued their home at $145,300.00. As of the petition date, the amount due on the Refinance Loan was approximately $75,000, while the amount due under the HELOC was roughly $162,000.

II.     POSITIONS OF THE PARTIES

Pursuant to § 547 of the Bankruptcy Code, a trustee may "avoid certain prepetition transfers of property of the debtor on account of an antecedent debt as a consequence of which a creditor receives more than it would have received in a chapter 7 liquidation proceeding." Travelers Ins. Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Services, Inc.), 980 F.3d 792, 795-96 (1st Cir. 1992). In this case, the

---

[3] Chase describes HARP as "a federal program created by the Federal Housing Finance Agency to assist homeowners who are financially struggling." Def. Mem. in Support of M. for Summ. J. at 8, Dec. 20, 2013, ECF No. 28. Through the refinancing, the Debtors' interest rate and monthly payments were lowered.

3

Trustee argues that the Refinance Mortgage is avoidable as just such a preferential transfer under § 547(b) of the Code.[4] The parties agree, as does the Court, that the first four required elements of § 547(b) have been established. The transfer was made: (1) to a creditor (Chase); (2) on account of an antecedent debt (the Refinance Loan); (3) while the Debtors were insolvent; and (4) within ninety days of the filing of the bankruptcy petition.[5] The parties disagree, however, on whether the transfer enabled Chase to receive more than Chase would have received under Chapter 7 if the transfer had not been made. See 11 U.S.C. § 547(b)(5).

---

[4] The term "transfer" under the Code is defined to include "the creation of a lien." 11 U.S.C. § 101(54)(B). Section 547(b) provides, in relevant part, that a transfer is avoidable (unless certain defenses are established) when the transfer is:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made –

    (A) on or within 90 days before the date of the filing of the petition;

. . .

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

[5] Although the Debtors granted the Refinance Mortgage to Chase on January 20, 2012, the mortgage was not recorded, and thus not perfected, until April 18, 2012. Under § 547(e), therefore, the transfer (the granting of the mortgage) is deemed made at the time the mortgage was recorded, since that perfection occurred more than 30 days from the time the transfer took effect as between the Debtors and Chase. See 11 U.S.C. § 547(e)(2)(B).

According to the Trustee, since the value of the House and Side Lots exceed the amount of the Refinance Loan, the Refinance Mortgage is fully secured, enabling Chase, absent avoidance of the Refinance Mortgage, to recover in full on the underlying debt. But, absent that security, the Trustee argues, Chase would receive little or no distribution on account of the Refinance Loan. Thus, the transfer of the Refinance Mortgage enables Chase to receive a greater distribution on its claim than it otherwise would in a Chapter 7 proceeding.[6]

Chase argues otherwise. First, Chase urges the Court to accept the applicability of the "earmarking doctrine" to the facts of this case, arguing that the "transfer should be viewed in substance as a transfer of the mortgage from Chase to Chase." Def. Suppl. Brief at 2, March 14, 2014, ECF No. 51. In an attempt to distinguish this case from Collins v. Greater Atlantic Mortgage Corp. (In re Lazarus), 478 F.3d 12 (1st Cir. 2007), where the First Circuit Court of Appeals rejected an earmarking argument on facts similar to those here, Chase notes that here, unlike in the Lazarus case, Chase was both the existing *and* refinancing lender. In addition, Chase argues, equitable considerations militate in favor of applying the earmarking doctrine, as the refinancing was approved under HARP to "provide[ ] the Debtors with a more affordable, more stable mortgage loan." Def. Suppl. Brief at 4.

Chase further argues that, even absent the Refinance Mortgage, it remains a secured creditor on account of the HELOC Mortgage. According to Chase, since the

---

[6] According to the Trustee's calculations, the maximum distribution Chase could possibly have received in a hypothetical liquidation proceeding had the Debtors not granted the Refinance Mortgage is approximately $13,000. See Pl.'s M. for Summ. J. at 10, Dec. 20, 2013, ECF No. 23. Chase, on the other hand, has consistently argued that, regardless of the existence of the Refinance Mortgage, there would be *no* nonexempt equity available for distribution. See Def. Mem. in Support of M. for Summ. J. at 10; Def. Opp. to T'ee M. for Summ. J. at 6, January 10, 2014, ECF No. 41.

5

outstanding balance of the HELOC exceeds the value of the House and Side Lots, there would be no non-exempt equity available for distribution to unsecured creditors regardless of the existence of the Refinance Mortgage.

III.   DISCUSSION

    A.   **Summary Judgment Standard**

In order to succeed on a motion for summary judgment, a party must establish "'that there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'" OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Can., 684 F. 3d 237, 241 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).[7] Here, the parties agree on the facts material to the outcome of their cross-motions for summary judgment, and the only remaining questions are issues of law.

    B.   **The Earmarking Doctrine**

"The earmarking doctrine applies 'where a third party lends money to the debtor for the specific purpose of paying a selected creditor.' Glinka v. Bank of Vt. (In re Kelton Motors, Inc.), 97 F.3d 22, 28 (2d Cir.1996). In such situations, the loan funds are said to be 'earmarked' and the payment is held not to constitute a voidable preference." Cadle Co. v. Mangan (In re Flanagan), 503 F.3d 171, 184 (2d Cir. 2007). As the First Circuit Court of Appeals has explained, "the earmarking doctrine relies on a conceptual view that the payment passing through the debtor's hands is not his and that he is merely a kind of bailee." Lazarus, 478 F.3d at 15.

In Lazarus, however, the First Circuit unabashedly rejected the use of the

---

[7] Fed. R. Civ. P. 56(a) is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

earmarking doctrine in the context of a refinanced mortgage, and its reasoning did not turn on the separate identities of the old and new creditors.  Rather, the Lazarus court detailed the salient aspects of a refinancing transaction that prevent use of the earmarking doctrine in such contexts:

> [I]n refinancing there are multiple transactions, including a new loan to the debtor, a mortgage back from the debtor to the new lender, a pre-arranged use of the proceeds of the loan to pay off the old loan and the release of the old mortgage. Thus, new proceeds are generated, nominally for the benefit of the debtor, and the debtor, by making a new mortgage, transfers a property interest to the new lender.
> . . . Lazarus made a *new* mortgage in favor of GAMC, probably on different terms than the original (or there would have been no benefit to refinancing). Then, when GAMC paid off Washington Mutual's loan, the latter *released* its own mortgage. This did not transfer the old mortgage to GAMC; it merely meant that GAMC's mortgage was now first in line rather than a subordinate mortgage. The debtor did not act merely as a bailee with the mortgage passing through her hands from Washington Mutual to GAMC.

Id. at 16 (emphasis in original).  Similarly, here, the Debtors made a *new* mortgage in favor of Chase, Chase paid off the 2004 Loan, and Chase *released* the 2004 mortgage. The Debtors clearly did not act merely as bailees with the 2004 Mortgage passing from "Chase to Chase."  The 2004 Mortgage was extinguished.  And the Refinance Mortgage (had it been properly perfected) would then be first in line.  Accordingly, this Court can see no distinction between the refinancing transaction at issue in Lazarus and the transaction that occurred here.  Accordingly, as in Lazarus, "the earmarking concept does not provide [Chase] an escape from the plain language of section 547(b) in the case of a belatedly-perfected transfer of a security interest," id., regardless of the fact that it was both the original and refinancing lender. See also Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee), 530 F.3d 458, 470 ("As did the First Circuit in In re Lazarus and the clear majority of courts that have decided the issue, we conclude

7

that the earmarking doctrine does not protect the late-perfecting refinancer from preference exposure.").

Chase's argument that the earmarking doctrine should apply here as an equitable matter, since the refinancing was done under the HARP program, is not persuasive. It can be assumed that a refinancing will provide a benefit to the borrower (at least in the borrower's estimation), regardless of whether the transaction takes place under the HARP program, or there would be no point to refinancing. As the Lee court aptly noted, this Court is bound to exercise its equitable powers "within the confines of the Bankruptcy Code" and the plain language of § 547 dictates the outcome here. Lee, 530 F.3d at 473 (quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)). Furthermore, the continuation of the beneficial aspects of the HARP program is in no way dependent on curing sloppy lending practices.

### C.    "More than it would receive"[8]

Chase maintains that if this Court were to "compare the monetary benefit [Chase] in fact received from the alleged preferential transfer with the projected amount of any distribution to [Chase] in the event there were an order for relief under chapter 7 and the preferential transfer had never occurred," Def. M. for Summ. J. at 9 (quoting Erin Food, 980 F.2d at 802-03), the outcome in each instance would be the same. Essentially, Chase argues that, given the existence of the second-position HELOC mortgage, the equity in the Debtors' real estate would not "have been available to help satisfy the claims of other (general) creditors," id. (quoting Kapela v. Newman, 649 F.2d 887, 893 (1st Cir. 1981)), in either case.

First, regardless of whether other general creditors would receive any distribution

---

[8] Lazarus, 478 F.3d at 14.

in either case, the Lazarus court made clear that lack of prejudice to general unsecured creditors does not obviate the "formal requirements of section 547" which are "designed to work mechanically, avoiding the necessity of demonstrating prejudice." Lazarus, 478 F.3d at 16.  As to Chase, its position in any subsequent Chapter 7 case was greatly improved by the granting (and perfection) of the Refinance Mortgage.  Absent security for the Refinance Loan, Chase would have received little or nothing on account of that loan in a Chapter 7 proceeding, and any remaining balance would be discharged. However, by dint of the Refinance Mortgage, it stands to exit these liquidation proceedings with sufficient security to ensure the Refinance Loan is paid in full. Accordingly, Chase would receive more vis-à-vis the Refinance Loan on account of the transfer than it otherwise would under Chapter 7.

The fact that Chase also holds the second-position HELOC Mortgage is irrelevant.  The Court agrees with the Trustee that the only relevant comparison is that between the recovery on the Refinance Loan in a hypothetical Chapter 7 case if the transfer had never occurred with the recovery on *that* loan Chase would receive in light of the transfer.  See 11 U.S.C. § 547(b)(5) (referring to "payment of *such debt*"; i.e., liability on a *particular* claim); see also Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp.), 993 F.2d 117, 119 (5th Cir. 1993) ("The phrase 'such debt' in (b)(5)(C) refers to the 'antecedent debt' of (b)(2)."). Under the appropriate analysis, therefore, Chase's position is improved by the existence of the Refinance Mortgage; i.e. the Refinance Mortgage gives Chase "more than it would receive" without it.  See Lazarus, 478 F.3d at 14.[9]

---

[9] The Trustee also argues that, had the Debtors filed their bankruptcy petition prior to the recording of the Refinance Mortgage, that mortgage would have been avoidable under § 544(a)

9

IV.  CONCLUSION

For all the foregoing reasons, the Court finds and rules that the undisputed material facts establish that the Debtors' granting of the Refinance Mortgage to Chase constitutes a preferential transfer under § 547(b) in light of Chase's failure to timely record that Mortgage. Accordingly, the Court will GRANT the Plaintiff's Motion for Summary Judgment and will DENY the Motion of JPMorgan Chase Bank, N.A. for Summary Judgment. Orders in conformity with this memorandum and a Judgment in favor of the plaintiff and against the defendant in the amount of $74,788.00 plus interest and costs pursuant to § 550 shall issue forthwith.[10]

DATED: July 2, 2014

_____
Henry J. Boroff
United States Bankruptcy Judge

---

and the lien in its first-priority position would be preserved for the benefit of the bankruptcy estate pursuant to § 551. While this argument sounds persuasive at first blush, it ignores the fact that the transfer sought to be avoided here is the granting of the Refinance Mortgage in the first place. While § 547(e) establishes the time of that transfer as the date the mortgage was perfected, the analysis under § 547(b)(5) requires the Court to consider Chase's recovery in a hypothetical Chapter 7 case had the "transfer" (the granting of the mortgage in the first instance) never occurred.

[10] This amount was requested in both the Complaint and the Trustee's summary judgment motion. Chase did not argue against the entry of such a judgment in the event the Court found in favor of the Trustee.